**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

*FILED*

*MAR 2 0 2007*

*CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.*

| | | |
|---|---|---|
| RITA FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 2:07-247- MHT |
| | ) | |
| JOSEPH A. LEE, JAMES PARKER, | ) | |
| LEON FRAZIER and ALABAMA | ) | |
| STATE UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### I. Jurisdiction

1.    Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202.  This suit is authorized and instituted pursuant to 42 U.S.C. §1983.  The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367.  Furthermore, jurisdiction over Plaintiff's claim for costs, expenses, and attorney's fees is additionally conferred by 42 U.S.C. §1988.

### II. Venue

2.    All events surrounding the allegations of this complaint occurred in Montgomery County, Alabama within the Middle District of Alabama.  The Middle District of Alabama is the proper judicial district where all actions giving rise to this claim arose pursuant to 28 U.S.C. §1391.

### III. Parties

3.    The Plaintiff, Rita Foster, hereinafter "Plaintiff" is a citizen of the United States and a resident of the state of Alabama. The Plaintiff was employed by Defendant Alabama State University in August, 2001, and continued until her termination on March 21, 2005.

4.    The Defendant James Parker is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities

5.    Defendant Joseph A. Lee is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities.

6.    Defendant Leon Frazier is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities.

7.    Defendant Alabama State University is a political division of the State of Alabama subject to suit under 42 U.S.C. §1983.

### IV. Facts

8.    In August of 2001, Rita Foster accepted a temporary position as a secretary at ASU in the Occupational Therapy Department. Subsequently, on the recommendation of Dr. Donna Toole, Ms. Foster was granted the permanent

position of Departmental Secretary. On June.3, 2002, Ms. Foster received an overall ranking of 3.7, on a 4.0 scale, in her Performance Appraisal.

9.     In April of 2003, Rita Foster was approached by Ms. Tuckora Landrum, Administrative Secretary for Dr. Alfred A. Smith, and asked to apply for a position as Senior Secretary to James Parker at the Joe L. Reed Acadome. Ms. Landrum described the difficulties in that office and Mr. Parker's proclivity to profanity and confrontation, but further stated that she felt that Rita had the perfect attitude and ability to handle the highs and lows of Mr. Parker, and could bring proficiency and harmony to that Office.

10.     After Ms. Foster interviewed with the Management Team, and had a brief interview with Mr. Parker, she was offered the position, and on May 1, 2003 began her employment as a Senior Secretary at the Acadome. The other Senior Secretary was Renae Daniel.

11.     After starting her new position, Mr. Parker submitted a travel request to Renae Daniel; however, Ms. Daniel did not complete the request and Mr. Parker then gave the travel request to Ms. Foster. Mr. Parker then handed Ms. Foster blank restaurant receipts with sequential numbers and asked Ms. Foster to fill them out. Ms. Foster chose not to fill these out. It soon became obvious after the submission of other numerous travel reimbursement forms, that Mr. Parker had a book of receipts with which to submit his meal stipends. When Ms. Foster would question Mr. Parker about the travel request, Mr. Parker would threaten to terminate Ms. Foster's employment and find someone who would carry out his orders.

12.     Rita Foster's responsibilities included scheduling Mr. Parker's

appointments and monitoring the Acadome budget. Ms. Foster submitted requisitions at the request of Mr. Parker, but had reason to believe that Mr. Parker was purchasing items for his personal use and not for the use of ASU.

13.    James Parker entered into a contract with Ted Galbreath for the purchase of chemicals to be used to treat the water in the Acadome. Mr. Galbreath first submitted invoices to Ms. Daniels, who refused to give the invoices to Mr. Parker. Mr. Galbreath then submitted the invoices to Ms. Foster, which she then passed on to Mr. Parker. When Ms. Foster attempted to discuss this practice with Mr. Parker, he became enraged and refused any discussion. These invoices totaled more than $70,000.00 for the year.

14.    In November of 2003, Chaplain Waters from the ASU Relocation Office came to the office in order to talk to James Parker about a faculty request to have church services in the Alabama Room. Mr. Parker became both infuriated and rude to Mr. Waters, stating that he was a busy man and didn't have time to talk. Mr. Parker then turned his wrath on Ms. Foster as well. This unprofessional behavior by Mr. Parker was reported by Mr. Waters to Dr. Leon Frazier, Vice President for Administrative Services. Mr. Waters subsequently told Ms. Foster that Mr. Parker was *"badmouthing"* her to people on campus and stating that he was going to get rid of her.

15.    During this time Mr. Parker was continuing to write up Ms. Foster on a regular basis about anything and everything. Ms. Foster continued to carry out her duties and tried to keep peace in the office.

16.    In November of 2003, James Parker submitted a travel voucher for a trip to Atlanta to meet with Gourmet Services, the food vendor for ASU. Shortly

4

after the submission of this request, Rita Foster was in Council Hall when she was summoned to Dr. Leon Frazier's office and asked to account for receipts submitted by Mr. Parker. Ms. Foster told Dr. Frazier that she could not answer his questions and he would need to discuss this matter with Mr. Parker. Dr. Frazier then asked Ms. Foster to immediately get Mr. Parker to his office. Dr. Frazier asked James Parker about the receipts, especially those relating to the car, parking and hotel expenses. Mr. Parker admitted that he had stayed with his daughter in Atlanta. At that time Dr. Frazier cursed and said, "I am sick and tired of paying for your personal trips".

17.    In mid-December 2003, Rita Foster went to Dr. Frazier in tears stating that she could no longer take the outbursts of rages and barrage of write-ups by Mr. Parker claiming that she was absent when she wasn't, the hostile environment in which she was working, and the unlawful and unethical conduct of Mr. Parker. Dr. Frazier told Ms. Foster to keep a journal of such activities, and that he would provide as much support for her as he could and that he fully understood the difficult environment in that office.

18.    The write ups intensified and on December 15, 2003, James Parker, in his ranting and raving manner, demanded that neither Ms. Foster nor Ms. Daniels should indicate his absences on his monthly time sheets.

19.    In January of 2004, ASU hosted at the Acadome a seminar sponsored by the Pentagon to introduce to ASU different opportunities for governmental grants and contracts. Ms. Foster as well as other staff were busy. Harriotte Hubbard, in Grants and Contracts, spent a great deal of time in the office. Mr. Parker was ranting and raving that nothing was right. Mr. Parker

5

started ranting and raving at Ms. Hubbard to the point that Ms. Hubbard became visibly upset and left the office after asking Ms. Foster to complete her work. Later that afternoon, Chris Whitehead, a work-study student handling the sound for the Pentagon event, confided in Ms. Foster that Mr. Parker had stated that he was working on getting rid of her.

20.    During this period of time, Dr. Leon Frazier came to the office on a number of occasions and asked Rita Foster if things were calming down in regard to Ms. Parker's behavior, at which time Ms. Daniel, on overhearing the question, explained to Dr. Frazier just how bad the situation had become.

21.    In February of 2004, ASU hosted the Gerald Lavert Valentine Concert at the Acadome. During this time, Kevin Sinclair, WBAS-FM personality, came to the office to meet with John Martin. When Mr. Sinclair arrived, he wanted to speak to James Parker. Ms. Foster stated that Mr. Parker was in his office. Ms. Foster took Mr. Sinclair to the office, at which time Mr. Sinclair opened the door to speak to Mr. Parker, but Mr. Parker never acknowledged Mr. Sinclair. Upon the completion of the meeting in the Arena, Mr. Sinclair returned and again attempted to speak with Mr. Parker, at which time Mr. Parker started yelling and screaming at Ms. Foster as to why Ms. Foster did not let him know that Mr. Sinclair was in the Arena. When Mr. Sinclair tried to explain that he came to his office and tried to get his attention, Mr. Parker would hear none of it, and continued his verbal attacks against Ms. Foster. Mr. Sinclair took Ms. Foster outside, hugged her, and apologized for the actions of Mr. Parker.

22.    On May 21, 2004, Rita Foster was admitted to Jackson Hospital, where she remained for three days, with a diagnosis of severe anemia and severe

6

uterine bleeding. Mr. Parker wrote Ms. Foster up for disappearing from her work station, even though Ms. Foster reported her illness and took sick leave.

23.    The hostile treatment and write ups against Rita Foster by James Parker continued and on June 30, 2004, Mr. Parker gave Rita Foster the poorest possible rating (1 out of a possible 4 points), which Ms. Foster refused to sign.

24.    On July 28, 2004, James Parker filed charges against Rita Foster, alleging that she falsified time sheets and disappeared from her desk without his knowledge, and requested that her employment be terminated.

25.    On September 22, 2004, Rita Foster was admitted to Warrior-Lodge Health Center for 17 days, exhausted, anemic, and under great stress, anxiety and depression due to the untenable situation at work caused by the abusive and unethical conduct of James Parker.

26.    On October 15, 2004, James Parker wrote a memorandum to Dr. Leon Frazier demanding the firing Rita Foster and "that we bring closure to this matter immediately."

27.    On January 13, 2005, a hearing, pursuant to Section 6.3.1 of the Non Academic Staff Handbook, was held on the alleged charges by James Parker. Rita Foster, at the hearing, submitted documents and explained any absences from her desk as being justified and with notice to her superior or other office personnel. The hearing lasted for nineteen (19) minutes.

28.    On February 10, 2005, James Parker submitted a travel request in regard to a meeting with Dan Washborn of the Alabama High School Athletic Association. Dr. Leon Frazier called Rita Foster and asked her to provide backup documentation for the meeting, when Ms. Foster advised Mr. Parker that Dr.

Frazier needed backup for the meeting, Mr. Parker refused, stating that he didn't need backup for the trip. On instructions from Dr. Frazier, Ms. Foster called Dan Washborn and he advised that neither he nor anyone on his staff had met with Mr. Parker. Mr. Washborn further advised that he and his staff were actually at another meeting on that date.

29.   On February 23, 2005, the Hearing Officer assigned to hear the charges of James Parker against Rita Foster, sent to Mr. Olan Wesley a "Memorandum" stating that "'we followed the pertinent findings and conclusions and recommendations of Dr. Leon Frazier". There was no independent "finding of facts and recommendations," provided by the Hearing Officer, as mandated in the Non-Academic Staff Handbook, Section 6. 3.1 (F)(9), nor was there a decision of the Hearing Officer rendered "within 30 days after completion of the hearing" as mandated by Section 6.3.1 (F) (9). This was noted by Dr. Leon Frazier in his Position Statement to the President dated March 3, 2005, as follows: "The hearing officer's report did not specify any particular findings based on a hearing or specific recommendation derived from a hearing." Dr. Leon Frazier subsequently advised Ms. Foster that she should appeal her termination to the ASU Board of Trustees, pursuant to Section 6.3.2.

30.   On March 11, 2005, Rita Foster submitted a "Written Statement of Position in Response to the Hearing Officer's Findings and Recommendations," pointing out that the "Memorandum" submitted by the Hearing Officer "was clearly lacking a report of findings" and that the report "makes no mention of the documentation submitted during the hearing that answers [the charges of Mr. Parker]. Rita Foster further states in this letter: "It is my understanding that this

8

process is in place to offer staff and faculty an impartial means of addressing issues requiring resolution. Therefore, Ms. Foster is concerned that this process has flagrantly denied her due process and violated her rights to a hearing worthy of the President's review. Ms. Foster again answered the charges against her by James Parker and referenced her unblemished employment at ASU in the Busky Health Sciences building under the professional guidance of Dr. Donna Toole.

31.    Foster has been verbally abused in the presence of others, subjected to profanity in the presence of others, asked to submit false documents on [behalf Mr. James Parker] and has been blamed for the actions or inactions of others. Foster has persevered under much stress with the assistance of weekly professional counseling. Foster has found weekly counseling necessary to deal with the added stress of this untenable situation. Having sought counseling demonstrates her desire to work with this situation and maintain her sanity rather than seek an 'outside' legal remedy. Foster does not wish to be caught up in the web of issues surrounding this office that have to date resulted in a barrage of unfounded write-ups on file about her employment in Human Resources in an attempt to 'manage her out the door'.

32.    On March 21 2005 Rita Foster was called to the Human Resources Office and was given a letter signed by Olan L. Wesley, stating that her employment at ASU was immediately terminated. Ms. Foster immediately went to her office and advised Mr. Parker, as well as Ms. Daniels, of the status of the projects which she was working on, gathered her personal effects and left the ASU campus.

33.    On or about April 6, 2005, Rita Foster filed an Appeal of her

Termination to the ASU Board of Trustees, pursuant to Section 6.3.2 of the Non Academic Handbook, filed in the Office of the President.

34.    On September 22, 2005, Rita Foster attended the meeting of the ASU Board of Trustees but there was no discussion or mention of her pending appeal. Ms. Foster subsequently called Olan Wesley, and inquired whether the Board of Trustees had discussed her appeal or made any decision. Mr. Wesley refused to provide Ms. Foster with any information.

35.    On October 14, 2005, Sarita Atkins, of The Anderson Law Firm, wrote a letter on behalf of Rita Foster to Elton Dean, Chairman of ASU Board of Trustees, requesting the status of Ms. Foster's appeal. Neither Ms. Atkins nor Rita Foster ever received a response.

36.    On or about June 28, 2005, Rita Foster turned over all documents concerning her employment at ASU, and the unethical and unlawful actions and conduct of James Parker, to the Alabama Ethics Commission.

37.    On May 9, 2006, the Alabama Ethics Commission conducted a hearing on the allegations of the unethical and unlawful conduct of James Parker.

38.    On May 24, 2006, the President of ASU placed James Parker on administrative leave with pay, pending an internal investigation.

39.    On June 8, 2006, the Alabama Ethics Commission issued its unanimous opinion holding that "there exists cause to believe Mr. Parker has violated the ethics law" and further referred its "findings and the Preliminary Report of investigation to the Attorney General of the State of Alabama for review and appropriate legal action."

40.    On July 24, 2006, ASU reported that James Parker's contract as

Acadome Director would not be renewed, and would expire on September 30, 2006. James Parker was reassigned to ASU's Student Services Department, but continued to draw his $72,834.00 a year salary.

## V. Causes of Action

## COUNT I

## BREACH OF CONTRACT (PENDENT STATE LAW CLAIM)

41.    Plaintiff reavers and incorporates paragraphs 1 through 40 above as fully set forth herein.

42.    The Plaintiff and Alabama State had a contractual employment arrangement, the terms of which, including disciplinary and termination provisions were set forth in the Non-Academic Staff Employee Handbook provided to the Plaintiff. The Handbook included personnel policies and procedures that applied to all non-academic employees. The Defendants Lee, Parker, and Frazier, by acceptance of their supervisory positions, were contractually bound to abide by and enforce the provisions of the handbook and the Plaintiff's contractual relationship with Alabama State.

43.    The terms of the employment specifically set forth the Plaintiff's due process rights to be provided during any disciplinary or termination proceeding and set forth the appeal rights following any such proceeding.

44.    The Defendants intentionally breached their contract with the Plaintiff as they failed to follow the provisions relating to disciplinary and termination proceedings, failed to provide the due process called for under the terms of her employment, and failed to afford her the contractual rights relating

to her appeal of her termination. The Defendants failed to follow the procedures in an effort to hide the improper and fraudulent conduct of one or more of the Defendants.

45.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein.

## COUNT II

### CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. §1983 and §1985 ( CONSPIRACY)

46.    Plaintiff reavers and incorporates paragraphs 1 through 45 above as set forth herein.

47.    Defendants Lee, Frazier and Parker, each in their individual capacities, conspired to cover up the financial mismanagement as to the Acadome. Frazier and Lee were aware as early as 2001 about the inappropriate expenditure of State funds at the Acadome. Parker regularly misappropriated Acadome funds. Lee and Frazier knew in 2003 that Parker submitted false travel vouchers in his position at the Acadome. Lee and Frazier knew about the false vouchers submitted by Parker in 2005 on Parker's alleged AHSAA trip to Mobile. Lee and Frazier endorsed Parker's misappropriation of State of Alabama funds by failing to protect Foster with knowledge of her complaints about Parker. Lee and Frazier only acted after public disclosure was made of this mismanagement. Each defendant conspired to the detriment of Foster in a malicious, willful manner in reckless disregard for the rights of Foster.

48.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants unlawful conduct in conspiring to keep Foster's

complaints about Parker out of the public domain.

## COUNT III

### CONSPIRACY (PENDENT STATE LAW CLAIM)

49.    Plaintiff reavers and incorporates paragraphs 1 through 48 above as set forth herein.

50.    Defendants Parker, Frazier and Lee in their individual capacities conspired to wrongfully breach Foster's contract of employment in retaliation for her activities related to the whistle blowing on Defendant Parker's theft of University funds. The conspiracy continues to this day. Ms. Foster's appeal has not been heard nor decided upon in nearly two years from the time of the adverse employment action. This conspiracy was done maliciously, willfully and with reckless disregard for the Plaintiff's rights. The Defendant engages in a pattern and practice of discriminating against whistle blowers in job assignments, disciplines, discharge and other terms, conditions and privileges of employment.

51.    Plaintiff has no plain, adequate or complete remedy at law to address the wrongs alleged herein.

52.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein.

## COUNT IV

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DUE PROCESS)

53.    Plaintiff reavers and incorporates paragraphs 1 through 52 above as set forth herein.

54.    Plaintiff was denied due process by each defendant in their

13

individual and official capacities in retaliation for failing to aid in the unethical, illegal and/or criminal conduct of James Parker in violation of her Fourteenth Amendment rights as enforced pursuant to 42 U.S.C. §1983.

55.    Plaintiff was fired without being given the due process granted to her by Alabama State University Non-Academic Staff Handbook. Specifically, Defendants did not follow appropriate procedures for disciplinary action. The Defendants did not adhere to the disciplinary guidelines nor did they allow the Plaintiff her appeal to the Board of Trustees. To date the Board of Trustees has not heard Foster's properly filed appeal. Defendant Lee failed to bring the matter before the Board to squelch Foster's right to speak freely about mismanagement of funds at the Acadome. Defendant Frazier had direct knowledge of Parker's activities through conversations with Foster. Defendant Parker was motivated by his own financial self interest in working to fire Foster. Defendant Lee staged the cover up to prevent the ASU Board of Directors and the public from knowing about the corruption that was occurring under his watch.

56.    Plaintiff is now suffering and will continue to suffer irreparable harm from these defendants unlawful conduct.

**COUNT V**

**VIOLATIONS OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983
AND THE FOURTEENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION**

**(FAILURE TO PROPERLY TRAIN, SUPERVISE AND CONTROL)**

57.    Plaintiff reavers and incorporates paragraphs 1 through 56 above as set forth herein.

14

58.    Plaintiff's protected rights were violated by the failure of defendants Lee and Frazier by their failure to train, supervise and control the actions of defendant Parker. Lee and Frazier promulgated customs, policies and practices that led to no fiscal accountability at the ASU Acadome.

59.    Defendants Lee and Frazier had knowledge as early as 2001 that Parker had improperly, illegally and/or criminally misappropriated funds intended for use at the Joe L. Reed Acadome. Lee and Frazier failed to supervise the activities of Parker for the four years after the State of Alabama Ethics Commission investigated the financial mismanagement at the Acadome. The failure on the part of Lee and Frazier to supervise Parker directly led to the violation of the Plaintiff's due process rights after Parker instructed Foster to aid in the illegal, improper and/or criminal conduct of falsifying invoices, receipts and taking kick-backs that Parker benefited from the activity.

60.    Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain, anguish and lost wages and benefits as a consequence of the Defendants' unlawful conduct.

## COUNT VI

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (EQUAL PROTECTION)

61.    Plaintiff reavers and incorporates paragraphs 1 through 60 above as set forth herein.

62.    Plaintiff Foster was treated differently than Defendant Parker and other male employees at Alabama State University in violation of the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution.

63.    Plaintiff had her property right in her employment taken away for allegedly incorrectly filling out her time sheets. Male employees at Alabama State University were not brought up on charges and dismissed for the same conduct in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants Lee and Frazier had direct knowledge of male employees that allegedly filed incorrect time reports; however, these employees did not charge a male supervisor with financial misconduct. Male employees maintained their positions and suffered no adverse employment actions.

64.    Plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct.

## **Prayer for Relief**

WHEREFORE the Plaintiff respectfully prays this Court assume jurisdiction of this action and after trial:

1.    Issue declaratory judgment that Defendants' employment practices, policies, procedures, conditions and customs are volatile of the Plaintiff's rights as secured under her contract of employment.

2.    Grant the Plaintiff a permanent injunction enjoining the Defendants, its agents, successors, employees, attorneys, and those acting in concert with the Defendant, and that the Defendants' request from continuing to violate 42 U.S.C. §1983.

3.    Enter an Order requiring Defendants to make Plaintiff whole by awarding her reinstatement, lost wages and benefits (plus interest),

16

compensatory and punitive damages, loss of benefits including retirement, pension, seniority, and other benefits of employment.

4.      Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited, an award of cost, attorneys fees and expenses, both at common law and under 42 U.S.C. §1988.

I, Rita Foster hereby affirm and certify that the factual allegation of this Complaint are true, correct and accurate.


_____
RITA FOSTER


STATE OF ALABAMA            )
COUNTY OF MONTGOMERY     )

I, the undersigned authority, a Notary Public in and for said County and State, hereby certify that _____, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day, that being informed of the contents of said instrument, she executed same voluntarily on day the same bears date.

GIVEN under my hand and official seal this _____ day of March, 2007.


_____
Notary Public
My Commission Expires: _____


(SEAL)

## **JURY DEMAND**

THE PLAINTIFF DEMANDS A TRIAL BY STRUCT JURY.

Respectfully submitted this _____ day of _____, 2007.

17

_____
DONALD R. JONES, JR.
ASB-8900-067D

OF COUNSEL:

DONALD R. JONES, JR.
2000 Interstate Park Drive
Suite 104
Montgomery, Alabama 36109
(334)277-3939

_____
THOMAS C. TANKERSLEY
ASB-0492-R74T

OF COUNSEL:

THOMAS C. TANKERSLEY, P.C.
602 South Hull Street
Post Office Box 11386
Montgomery, Alabama 36111-0386
(334)819-7890

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 MAR 20  A 10: 03

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT

| | |
|---|---|
| RITA FOSTER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO.: 2:07-CV-247-MHT |
| | ) |
| JOE A. LEE, JAMES PARKER, | ) |
| LEON FRAZIER and ALABAMA | ) |
| STATE UNIVERSITY, | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| **Defendants.** | ) |

## COMPLAINT

### I. Jurisdiction

1.   Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202.  This suit is authorized and instituted pursuant to 42 U.S.C. §1983.  The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367.  Furthermore, jurisdiction over Plaintiff's claim for costs, expenses, and attorney's fees is additionally conferred by 42 U.S.C. §1988.

### II. Venue

2.   All events surrounding the allegations of this complaint occurred in Montgomery County, Alabama within the Middle District of Alabama.  The Middle District of Alabama is the proper judicial district where all actions giving rise to this claim arose pursuant to 28 U.S.C. §1391.

### III. Parties

3.     The Plaintiff, Rita Foster, hereinafter "Plaintiff" is a citizen of the United States and a resident of the state of Alabama.  The Plaintiff was employed by Defendant Alabama State University in August, 2001, and continued until her termination on March 21, 2005.

4.     The Defendant James Parker is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities

5.     Defendant Joseph A. Lee is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities.

6.     Defendant Leon Frazier is an individual over the age of nineteen years and is a resident of Montgomery County, Alabama within the Middle District of Alabama, sued in his individual and official capacities.

7.     Defendant Alabama State University is a political division of the State of Alabama subject to suit under 42 U.S.C. §1983.

### IV. Facts

8.     In August of 2001, Rita Foster accepted a temporary position as a secretary at ASU in the Occupational Therapy Department. Subsequently, on the recommendation of Dr. Donna Toole, Ms. Foster was granted the permanent

2

position of Departmental Secretary. On June.3, 2002, Ms. Foster received an overall ranking of 3.7, on a 4.0 scale, in her Performance Appraisal.

9.    In April of 2003, Rita Foster was approached by Ms. Tuckora Landrum, Administrative Secretary for Dr. Alfred A. Smith, and asked to apply for a position as Senior Secretary to James Parker at the Joe L. Reed Acadome. Ms. Landrum described the difficulties in that office and Mr. Parker's proclivity to profanity and confrontation, but further stated that she felt that Rita had the perfect attitude and ability to handle the highs and lows of Mr. Parker, and could bring proficiency and harmony to that Office.

10.    After Ms. Foster interviewed with the Management Team, and had a brief interview with Mr. Parker, she was offered the position, and on May 1, 2003 began her employment as a Senior Secretary at the Acadome. The other Senior Secretary was Renae Daniel.

11.    After starting her new position, Mr. Parker submitted a travel request to Renae Daniel; however, Ms. Daniel did not complete the request and Mr. Parker then gave the travel request to Ms. Foster. Mr. Parker then handed Ms. Foster blank restaurant receipts with sequential numbers and asked Ms. Foster to fill them out. Ms. Foster chose not to fill these out. It soon became obvious after the submission of other numerous travel reimbursement forms, that Mr. Parker had a book of receipts with which to submit his meal stipends. When Ms. Foster would question Mr. Parker about the travel request, Mr. Parker would threaten to terminate Ms. Foster's employment and find someone who would carry out his orders.

12.    Rita Foster's responsibilities included scheduling Mr. Parker's

3

appointments and monitoring the Acadome budget. Ms. Foster submitted requisitions at the request of Mr. Parker, but had reason to believe that Mr. Parker was purchasing items for his personal use and not for the use of ASU.

13.    James Parker entered into a contract with Ted Galbreath for the purchase of chemicals to be used to treat the water in the Acadome. Mr. Galbreath first submitted invoices to Ms. Daniels, who refused to give the invoices to Mr. Parker. Mr. Galbreath then submitted the invoices to Ms. Foster, which she then passed on to Mr. Parker. When Ms. Foster attempted to discuss this practice with Mr. Parker, he became enraged and refused any discussion. These invoices totaled more than $70,000.00 for the year.

14.    In November of 2003, Chaplain Waters from the ASU Relocation Office came to the office in order to talk to James Parker about a faculty request to have church services in the Alabama Room. Mr. Parker became both infuriated and rude to Mr. Waters, stating that he was a busy man and didn't have time to talk. Mr. Parker then turned his wrath on Ms. Foster as well. This unprofessional behavior by Mr. Parker was reported by Mr. Waters to Dr. Leon Frazier, Vice President for Administrative Services. Mr. Waters subsequently told Ms. Foster that Mr. Parker was *"badmouthing"* her to people on campus and stating that he was going to get rid of her.

15.    During this time Mr. Parker was continuing to write up Ms. Foster on a regular basis about anything and everything. Ms. Foster continued to carry out her duties and tried to keep peace in the office.

16.    In November of 2003, James Parker submitted a travel voucher for a trip to Atlanta to meet with Gourmet Services, the food vendor for ASU. Shortly

4

after the submission of this request, Rita Foster was in Council Hall when she was summoned to Dr. Leon Frazier's office and asked to account for receipts submitted by Mr. Parker. Ms. Foster told Dr. Frazier that she could not answer his questions and he would need to discuss this matter with Mr. Parker. Dr. Frazier then asked Ms. Foster to immediately get Mr. Parker to his office. Dr. Frazier asked James Parker about the receipts, especially those relating to the car, parking and hotel expenses. Mr. Parker admitted that he had stayed with his daughter in Atlanta. At that time Dr. Frazier cursed and said, "I am sick and tired of paying for your personal trips".

17.    In mid-December 2003, Rita Foster went to Dr. Frazier in tears stating that she could no longer take the outbursts of rages and barrage of write-ups by Mr. Parker claiming that she was absent when she wasn't, the hostile environment in which she was working, and the unlawful and unethical conduct of Mr. Parker. Dr. Frazier told Ms. Foster to keep a journal of such activities, and that he would provide as much support for her as he could and that he fully understood the difficult environment in that office.

18.    The write ups intensified and on December 15, 2003, James Parker, in his ranting and raving manner, demanded that neither Ms. Foster nor Ms. Daniels should indicate his absences on his monthly time sheets.

19.    In January of 2004, ASU hosted at the Acadome a seminar sponsored by the Pentagon to introduce to ASU different opportunities for governmental grants and contracts. Ms. Foster as well as other staff were busy. Harriotte Hubbard, in Grants and Contracts, spent a great deal of time in the office. Mr. Parker was ranting and raving that nothing was right. Mr. Parker

5

started ranting and raving at Ms. Hubbard to the point that Ms. Hubbard became visibly upset and left the office after asking Ms. Foster to complete her work. Later that afternoon, Chris Whitehead, a work-study student handling the sound for the Pentagon event, confided in Ms. Foster that Mr. Parker had stated that he was working on getting rid of her.

20.    During this period of time, Dr. Leon Frazier came to the office on a number of occasions and asked Rita Foster if things were calming down in regard to Ms. Parker's behavior, at which time Ms. Daniel, on overhearing the question, explained to Dr. Frazier just how bad the situation had become.

21.    In February of 2004, ASU hosted the Gerald Lavert Valentine Concert at the Acadome. During this time, Kevin Sinclair, WBAS-FM personality, came to the office to meet with John Martin. When Mr. Sinclair arrived, he wanted to speak to James Parker. Ms. Foster stated that Mr. Parker was in his office. Ms. Foster took Mr. Sinclair to the office, at which time Mr. Sinclair opened the door to speak to Mr. Parker, but Mr. Parker never acknowledged Mr. Sinclair. Upon the completion of the meeting in the Arena, Mr. Sinclair returned and again attempted to speak with Mr. Parker, at which time Mr. Parker started yelling and screaming at Ms. Foster as to why Ms. Foster did not let him know that Mr. Sinclair was in the Arena. When Mr. Sinclair tried to explain that he came to his office and tried to get his attention, Mr. Parker would hear none of it, and continued his verbal attacks against Ms. Foster. Mr. Sinclair took Ms. Foster outside, hugged her, and apologized for the actions of Mr. Parker.

22.    On May 21, 2004, Rita Foster was admitted to Jackson Hospital, where she remained for three days, with a diagnosis of severe anemia and severe

6

uterine bleeding. Mr. Parker wrote Ms. Foster up for disappearing from her work station, even though Ms. Foster reported her illness and took sick leave.

23.    The hostile treatment and write ups against Rita Foster by James Parker continued and on June 30, 2004, Mr. Parker gave Rita Foster the poorest possible rating (1 out of a possible 4 points), which Ms. Foster refused to sign.

24.    On July 28, 2004, James Parker filed charges against Rita Foster, alleging that she falsified time sheets and disappeared from her desk without his knowledge, and requested that her employment be terminated.

25.    On September 22, 2004, Rita Foster was admitted to Warrior-Lodge Health Center for 17 days, exhausted, anemic, and under great stress, anxiety and depression due to the untenable situation at work caused by the abusive and unethical conduct of James Parker.

26.    On October 15, 2004, James Parker wrote a memorandum to Dr. Leon Frazier demanding the firing Rita Foster and "that we bring closure to this matter immediately."

27.    On January 13, 2005, a hearing, pursuant to Section 6.3.1 of the Non Academic Staff Handbook, was held on the alleged charges by James Parker. Rita Foster, at the hearing, submitted documents and explained any absences from her desk as being justified and with notice to her superior or other office personnel. The hearing lasted for nineteen (19) minutes.

28.    On February 10, 2005, James Parker submitted a travel request in regard to a meeting with Dan Washborn of the Alabama High School Athletic Association. Dr. Leon Frazier called Rita Foster and asked her to provide backup documentation for the meeting, when Ms. Foster advised Mr. Parker that Dr.

Frazier needed backup for the meeting, Mr. Parker refused, stating that he didn't need backup for the trip. On instructions from Dr. Frazier, Ms. Foster called Dan Washborn and he advised that neither he nor anyone on his staff had met with Mr. Parker. Mr. Washborn further advised that he and his staff were actually at another meeting on that date.

29.    On February 23, 2005, the Hearing Officer assigned to hear the charges of James Parker against Rita Foster, sent to Mr. Olan Wesley a "Memorandum" stating that "'we followed the pertinent findings and conclusions and recommendations of Dr. Leon Frazier". There was no independent "finding of facts and recommendations," provided by the Hearing Officer, as mandated in the Non-Academic Staff Handbook, Section 6. 3.1 (F)(9), nor was there a decision of the Hearing Officer rendered "within 30 days after completion of the hearing" as mandated by Section 6.3.1 (F) (9). This was noted by Dr. Leon Frazier in his Position Statement to the President dated March 3, 2005, as follows: "The hearing officer's report did not specify any particular findings based on a hearing or specific recommendation derived from a hearing." Dr. Leon Frazier subsequently advised Ms. Foster that she should appeal her termination to the ASU Board of Trustees, pursuant to Section 6.3.2.

30.    On March 11, 2005, Rita Foster submitted a "Written Statement of Position in Response to the Hearing Officer's Findings and Recommendations," pointing out that the "Memorandum" submitted by the Hearing Officer "was clearly lacking a report of findings" and that the report "makes no mention of the documentation submitted during the hearing that answers [the charges of Mr. Parker]. Rita Foster further states in this letter: "It is my understanding that this

8

process is in place to offer staff and faculty an impartial means of addressing issues requiring resolution. Therefore, Ms. Foster is concerned that this process has flagrantly denied her due process and violated her rights to a hearing worthy of the President's review. Ms. Foster again answered the charges against her by James Parker and referenced her unblemished employment at ASU in the Busky Health Sciences building under the professional guidance of Dr. Donna Toole.

31.    Foster has been verbally abused in the presence of others, subjected to profanity in the presence of others, asked to submit false documents on [behalf Mr. James Parker] and has been blamed for the actions or inactions of others. Foster has persevered under much stress with the assistance of weekly professional counseling.  Foster has found weekly counseling necessary to deal with the added stress of this untenable situation. Having sought counseling demonstrates her desire to work with this situation and maintain her sanity rather than seek an 'outside' legal remedy.  Foster does not wish to be caught up in the web of issues surrounding this office that have to date resulted in a barrage of unfounded write-ups on file about her employment in Human Resources in an attempt to 'manage her out the door'.

32.    On March 21 2005 Rita Foster was called to the Human Resources Office and was given a letter signed by Olan L. Wesley, stating that her employment at ASU was immediately terminated. Ms. Foster immediately went to her office and advised Mr. Parker, as well as Ms. Daniels, of the status of the projects which she was working on, gathered her personal effects and left the ASU campus.

33.    On or about April 6, 2005, Rita Foster filed an Appeal of her

9

Termination to the ASU Board of Trustees, pursuant to Section 6.3.2 of the Non Academic Handbook, filed in the Office of the President.

34.     On September 22, 2005, Rita Foster attended the meeting of the ASU Board of Trustees but there was no discussion or mention of her pending appeal. Ms. Foster subsequently called Olan Wesley, and inquired whether the Board of Trustees had discussed her appeal or made any decision. Mr. Wesley refused to provide Ms. Foster with any information.

35.     On October 14, 2005, Sarita Atkins, of The Anderson Law Firm, wrote a letter on behalf of Rita Foster to Elton Dean, Chairman of ASU Board of Trustees, requesting the status of Ms. Foster's appeal. Neither Ms. Atkins nor Rita Foster ever received a response.

36.     On or about June 28, 2005, Rita Foster turned over all documents concerning her employment at ASU, and the unethical and unlawful actions and conduct of James Parker, to the Alabama Ethics Commission.

37.     On May 9, 2006, the Alabama Ethics Commission conducted a hearing on the allegations of the unethical and unlawful conduct of James Parker.

38.     On May 24, 2006, the President of ASU placed James Parker on administrative leave with pay, pending an internal investigation.

39.     On June 8, 2006, the Alabama Ethics Commission issued its unanimous opinion holding that "there exists cause to believe Mr. Parker has violated the ethics law" and further referred its "findings and the Preliminary Report of investigation to the Attorney General of the State of Alabama for review and appropriate legal action."

40.     On July 24, 2006, ASU reported that James Parker's contract as

Acadome Director would not be renewed, and would expire on September 30, 2006. James Parker was reassigned to ASU's Student Services Department, but continued to draw his $72,834.00 a year salary.

## V. Causes of Action

## COUNT I

## BREACH OF CONTRACT (PENDENT STATE LAW CLAIM)

41.     Plaintiff reavers and incorporates paragraphs 1 through 40 above as fully set forth herein.

42.     The Plaintiff and Alabama State had a contractual employment arrangement, the terms of which, including disciplinary and termination provisions were set forth in the Non-Academic Staff Employee Handbook provided to the Plaintiff. The Handbook included personnel policies and procedures that applied to all non-academic employees. The Defendants Lee, Parker, and Frazier, by acceptance of their supervisory positions, were contractually bound to abide by and enforce the provisions of the handbook and the Plaintiff's contractual relationship with Alabama State.

43.     The terms of the employment specifically set forth the Plaintiff's due process rights to be provided during any disciplinary or termination proceeding and set forth the appeal rights following any such proceeding.

44.     The Defendants intentionally breached their contract with the Plaintiff as they failed to follow the provisions relating to disciplinary and termination proceedings, failed to provide the due process called for under the terms of her employment, and failed to afford her the contractual rights relating

11

to her appeal of her termination. The Defendants failed to follow the procedures in an effort to hide the improper and fraudulent conduct of one or more of the Defendants.

45. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein.

## COUNT II

### CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. §1983 and §1985 ( CONSPIRACY)

46. Plaintiff reavers and incorporates paragraphs 1 through 45 above as set forth herein.

47. Defendants Lee, Frazier and Parker, each in their individual capacities, conspired to cover up the financial mismanagement as to the Acadome. Frazier and Lee were aware as early as 2001 about the inappropriate expenditure of State funds at the Acadome. Parker regularly misappropriated Acadome funds. Lee and Frazier knew in 2003 that Parker submitted false travel vouchers in his position at the Acadome. Lee and Frazier knew about the false vouchers submitted by Parker in 2005 on Parker's alleged AHSAA trip to Mobile. Lee and Frazier endorsed Parker's misappropriation of State of Alabama funds by failing to protect Foster with knowledge of her complaints about Parker. Lee and Frazier only acted after public disclosure was made of this mismanagement. Each defendant conspired to the detriment of Foster in a malicious, willful manner in reckless disregard for the rights of Foster.

48. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants unlawful conduct in conspiring to keep Foster's

12

complaints about Parker out of the public domain.

## COUNT III

### CONSPIRACY (PENDENT STATE LAW CLAIM)

49.    Plaintiff reavers and incorporates paragraphs 1 through 48 above as set forth herein.

50.    Defendants Parker, Frazier and Lee in their individual capacities conspired to wrongfully breach Foster's contract of employment in retaliation for her activities related to the whistle blowing on Defendant Parker's theft of University funds. The conspiracy continues to this day. Ms. Foster's appeal has not been heard nor decided upon in nearly two years from the time of the adverse employment action. This conspiracy was done maliciously, willfully and with reckless disregard for the Plaintiff's rights. The Defendant engages in a pattern and practice of discriminating against whistle blowers in job assignments, disciplines, discharge and other terms, conditions and privileges of employment.

51.    Plaintiff has no plain, adequate or complete remedy at law to address the wrongs alleged herein.

52.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein.

## COUNT IV

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DUE PROCESS)

53.    Plaintiff reavers and incorporates paragraphs 1 through 52 above as set forth herein.

54.    Plaintiff was denied due process by each defendant in their

13

individual and official capacities in retaliation for failing to aid in the unethical, illegal and/or criminal conduct of James Parker in violation of her Fourteenth Amendment rights as enforced pursuant to 42 U.S.C. §1983.

55.    Plaintiff was fired without being given the due process granted to her by Alabama State University Non-Academic Staff Handbook. Specifically, Defendants did not follow appropriate procedures for disciplinary action. The Defendants did not adhere to the disciplinary guidelines nor did they allow the Plaintiff her appeal to the Board of Trustees. To date the Board of Trustees has not heard Foster's properly filed appeal. Defendant Lee failed to bring the matter before the Board to squelch Foster's right to speak freely about mismanagement of funds at the Acadome. Defendant Frazier had direct knowledge of Parker's activities through conversations with Foster. Defendant Parker was motivated by his own financial self interest in working to fire Foster. Defendant Lee staged the cover up to prevent the ASU Board of Directors and the public from knowing about the corruption that was occurring under his watch.

56.    Plaintiff is now suffering and will continue to suffer irreparable harm from these defendants unlawful conduct.

## COUNT V

### VIOLATIONS OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### (FAILURE TO PROPERLY TRAIN, SUPERVISE AND CONTROL)

57.    Plaintiff reavers and incorporates paragraphs 1 through 56 above as set forth herein.

14

58.    Plaintiff's protected rights were violated by the failure of defendants Lee and Frazier by their failure to train, supervise and control the actions of defendant Parker. Lee and Frazier promulgated customs, policies and practices that led to no fiscal accountability at the ASU Acadome.

59.    Defendants Lee and Frazier had knowledge as early as 2001 that Parker had improperly, illegally and/or criminally misappropriated funds intended for use at the Joe L. Reed Acadome. Lee and Frazier failed to supervise the activities of Parker for the four years after the State of Alabama Ethics Commission investigated the financial mismanagement at the Acadome. The failure on the part of Lee and Frazier to supervise Parker directly led to the violation of the Plaintiff's due process rights after Parker instructed Foster to aid in the illegal, improper and/or criminal conduct of falsifying invoices, receipts and taking kick-backs that Parker benefited from the activity.

60.    Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain, anguish and lost wages and benefits as a consequence of the Defendants' unlawful conduct.

## COUNT VI

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION  (EQUAL PROTECTION)

61.    Plaintiff reavers and incorporates paragraphs 1 through 60 above as set forth herein.

62.    Plaintiff Foster was treated differently than Defendant Parker and other male employees at Alabama State University in violation of the Equal

15

Protection Clause of the Fourteenth Amendment of the United States Constitution.

63.    Plaintiff had her property right in her employment taken away for allegedly incorrectly filling out her time sheets. Male employees at Alabama State University were not brought up on charges and dismissed for the same conduct in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants Lee and Frazier had direct knowledge of male employees that allegedly filed incorrect time reports; however, these employees did not charge a male supervisor with financial misconduct. Male employees maintained their positions and suffered no adverse employment actions.

64.    Plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct.

### **Prayer for Relief**

WHEREFORE the Plaintiff respectfully prays this Court assume jurisdiction of this action and after trial:

1.    Issue declaratory judgment that Defendants' employment practices, policies, procedures, conditions and customs are volatile of the Plaintiff's rights as secured under her contract of employment.

2.    Grant the Plaintiff a permanent injunction enjoining the Defendants, its agents, successors, employees, attorneys, and those acting in concert with the Defendant, and that the Defendants' request from continuing to violate 42 U.S.C. §1983.

3.    Enter an Order requiring Defendants to make Plaintiff whole by awarding her reinstatement, lost wages and benefits (plus interest),

16

compensatory and punitive damages, loss of benefits including retirement, pension, seniority, and other benefits of employment.

4.    Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited, an award of cost, attorneys fees and expenses, both at common law and under 42 U.S.C. §1988.

I, Rita Foster hereby affirm and certify that the factual allegation of this Complaint are true, correct and accurate.

RITA FOSTER

STATE OF ALABAMA                )
COUNTY OF MONTGOMERY            )

I, the undersigned authority, a Notary Public in and for said County and State, hereby certify that *Rita Foster* whose name is signed to the foregoing, and who is known to me, acknowledged before me on this day, that being informed of the contents of said instrument, she executed same voluntarily on day the same bears date.

GIVEN under my hand and official seal this ___19___ day of March, 2007.

Notary Public
My Commission Expires: ___5-4-08___

(SEAL)

## JURY DEMAND

THE PLAINTIFF DEMANDS A TRIAL BY STRUCT JURY.

Respectfully submitted this __20__ day of __March__, 2007.

17

DONALD R. JONES, JR.
ASB-8900-067D

OF COUNSEL:

DONALD R. JONES, JR.
2000 Interstate Park Drive
Suite 104
Montgomery, Alabama 36109
(334)277-3939

THOMAS C. TANKERSLEY
ASB-0492-R74T

OF COUNSEL:

THOMAS C. TANKERSLEY, P.C.
602 South Hull Street
Post Office Box 11386
Montgomery, Alabama 36111-0386
(334)819-7890

18